H. A. MONDT, Appellee, v. IOWA LIGHT & RAILWAY CO., Appellant.

**RAILWAYS:** Crossing Accidents—''Last Clear Chance.'' The party 1. who has the last clear opportunity of avoiding an accident, notwithstanding the negligence of the other party, is considered responsible for it.

> PRINCIPLE APPLIED: The jury might have found that plaintiff, whose automobile was hit by an electric railway car at a crossing, was negligent in approaching and in going upon the crossing. But the motorman and conductor were standing upon the front platform when they saw that the auto was headed for the crossing. Their car was 500 feet from the crossing and coasting down grade, without power, at from 15 to 20 miles an hour. When within 200 feet of the crossing, they remarked that it did not appear as though the auto was going to stop. From this point on, the auto would be hidden by intervening objects. The power was then turned on, but soon turned off. Held to present a jury question under the doctrine of the last clear chance.

**TRIAL:** Instructions—Objections and Exceptions—Revision After 2, 4 Submission to Counsel—Insufficient Time for Exceptions. The act of the court in not granting counsel sufficient time to except to instructions, or in revising instructions after having submitted them to counsel, without affording further opportunity to except thereto, is not error, in the absence of a showing (a) of objections to such action of the court, and (b) of what changes the court made in the instructions. (Section 3705-a, Code Supplement, 1913.)

**RAILROADS:** Crossing Accidents—Last Clear Chance—Instructions. 3. In connection with an accident at a railway crossing, it is proper, after first instructing that the railway car would have the preference or right of way at the crossing, to also instruct:

''If the motorman has knowledge, or has reason to believe, that the automobile is not going to stop, it becomes his duty to use all

the reasonable means within his power to prevent a collision, even to the extent of stopping his car in time (if he can do so) to prevent an accident.''

**TRIAL:** Instructions—Objections and Exceptions—Revision After 2, 4 Submission to Counsel—Insufficient Time for Exceptions.

*Appeal from Boone District Court.*—R. M. WRIGHT, Judge.

SATURDAY, DECEMBER 18, 1915.

REHEARING DENIED, FRIDAY, NOVEMBER 24, 1916.

ACTION at law to recover damages. Verdict and judgment for plaintiff, and defendant appeals. The material facts are stated in the opinion.—*Affirmed.*

*John A. Hull,* for appellant.

*F. W. Ganoe* and *D. G. Baker,* for appellee.

WEAVER, J.—The defendant operates an electric railway extending between the city of Boone and the village of Logansport, and on the day in question one of its cars came into collision upon a public crossing with an automobile operated by the plaintiff, with resultant injury to the latter's vehicle. Plaintiff demands a recovery of damages, on the theory that the collision was occasioned by the negligence of defendant's employes operating the electric car, and without fault on his own part. A verdict was returned in his favor for $275, and judgment was entered thereon. The appellant has assigned numerous errors, but its argument is confined to three propositions, and to these only we give our attention.

I. The negligence is alleged to consist: (1) In operating the car over the crossing at an excessive and dangerous speed; (2) in failing to stop the car after discovering plaintiff's danger; (3) in failing to sound any signal or give warning of the car's approach; and (4) in failing to keep the car under reasonable control.

Appellant does not argue that the evidence is insufficient to justify a finding of negligence on its part, and, upon the record to which we shall hereinafter refer, it could not well make such claim. Its first proposition is that plaintiff is shown to have been guilty of contributory negligence as a matter of law, and this is in fact the one really debatable question in the case. Referring to the facts, the evidence tends to show that the collision occurred under conditions as follows: The crossing, though within the geographical limits of Boone, is outside of the settled area of the city, in the direction of the Des Moines River, and in or near a region of coal mines. The view as plaintiff approached the crossing was obstructed by a large billboard, by posts and poles, and by corn growing upon the adjacent land, and weeds covering the right of way up to a point close to the track. Plaintiff and the person riding with him both testify that they looked to see if any car was approaching; but, owing to the obstructions, they did not discover the car in time to prevent the collision. Plaintiff swears that the car, when he discovered it, was moving at not less than 30 miles an hour; and, although the power was shut off before it struck the automobile, the motorman did not succeed in stopping it until it had overrun the crossing 160 feet or more. The automobile was being driven at about 15 miles an hour, and as soon as plaintiff saw the car he released his clutch and applied both brakes; but the automobile slid up to the track, and stopped just before it was struck. He says no whistle or bell was sounded by the car. There is also evidence that, after the collision, the motorman, having stopped his car, came back to the crossing and, in reply to plaintiff's question why he did not ring the bell, said he did not see the automobile. The motorman, testifying for defendant, says:

1. RAILWAYS: crossing accidents: "last clear chance."

"I first saw the automobile when the car was 18 feet west of the crossing. I also saw it when it was down by the Northwestern track, probably four or five blocks. I was then

about 500 feet west of the crossing. It is higher there, quite a little grade. I rang a signal for that crossing 200 feet back, then at 40 feet from the crossing, and again right after I saw them. The conductor was standing on the right side of the front vestibule as we came toward the crossing. It is down grade there, and we always cut out the power and coast down. When we were about 500 feet from the crossing, the conductor said: 'There comes an automobile.' The power was cut off then, and after I got down to within about 200 feet of the crossing, I rang the gong and started to turn on the power again. And then when we got within probably 40 or 50 feet of the crossing, he was standing up and I was sitting down on the stool, and he says: 'I don't believe that automobile is going to stop.' So I cut out the power and started ringing the bell, but I couldn't see them on account of the corn, until they got up to within about 18 feet of the crossing. The signboard is right across our sight, and until I got beyond that point there I couldn't see across there at all, until I was about 18 feet of the crossing. I was ringing the bell and reversed the power then, but the rail was damp and the car skidded, and it is harder to stop the car when it is sliding than it is with brakes.''

The conductor also testifies:

''I saw his automobile when it was, as I should judge, three or four hundred feet south of the crossing, and the street car was four or five hundred feet from the crossing. I made the assertion to Mr. Hardy, the motorman, that there came a 'go-devil,' and he started to ringing his bell shortly after that. I don't think he went a hundred feet till he started to ring his bell, and as he got a little closer, I said: 'I don't believe that fellow is going to stop.' And he started to ringing his bell again, and by that time they were both pretty close to the track, and Mr. Hardy reversed his car, and they came together. The automobile struck the street car. The car got to the beaten path first. Mondt's auto-

mobile was 3 or 4 feet from the car. Hardy rang the gong two or three times before he got to the crossing.''

He also says that the car was running perhaps 15 or 20 miles an hour when they discovered the automobile, at which point the electric power was not on, the car coasting down the grade. At about 200 feet from the crossing, the motorman turned on the power, but very soon turned it off again.

Upon this showing—even upon that made by the defendant itself—we are of the opinion that at least a case was made for the jury, under the rule or doctrine of the last fair chance. The motorman and conductor saw the automobile while still 500 feet away, and saw that it and their own car were headed for the same crossing. Again at 200 feet, they observed it and were impressed with the thought that it was not going to stop. From that point, they knew that their view of the automobile would be shut off until it should appear at the crossing, yet no attempt was made to turn off the power, which was accelerating the momentum imparted to the car by the down grade of the track, or to bring the car under control, until too near the collision to avoid it. The evidence would have justified the jury in finding either or both parties chargeable with negligence; but we are satisfied that the jury could also properly find that the defendant had the last clear chance to have prevented the collision.

II.   The second matter of complaint by the appellant is that, although the instructions prepared by the court were submitted to counsel's attention in due time before the argument, yet, after counsel had signified his objections thereto, the court ''changed'' and revamped the language employed therein and did not again submit such revised charge to counsel. This is said to have been a prejudicial error or irregularity. Whether, upon a satisfactory record of the fact stated by counsel in the abstract and argument, this court would hold such act on the part of the trial court erroneous, we need not now consider. It does not

2. TRIAL: instructions: objections and exceptions: revision after submission to counsel: insufficient time for exceptions.

appear that any objection was made to the act of the court until the filing of the motion for new trial, and, what is more to the point, neither in the motion for new trial, nor in the abstracts, nor anywhere in the record before us, is there any showing whatever of what the instructions, as originally prepared, contained, or what changes were afterward made therein. We are therefore bound to presume that the changes, if any, were harmless, and that the court did not exceed or violate its duty in any material respect. The exception taken in this respect cannot be sustained.

III. The third and last division of the argument presents the following questions:

Counsel say that, as the place of the collision was within the city limits of Boone, defendant was there a street railway company, and not required to give the statutory signals. But the trial court nowhere held the defendant to any such duty. On the contrary, it limited defendant's duty to giving such signals as under the circumstances might be reasonably necessary, to give persons lawfully using the public road, reasonable opportunity to get out or keep out of the way. In this connection the jury was told that the railway company has the preference or right of way at a crossing, and that a person operating an automobile on the highway is required to respect this right, and to stop if necessary to avoid injury. The court nowhere charged that mere high rate of speed, independent of other circumstances, or a mere failure to sound an alarm signal, independent of other circumstances, constituted negligence. On the contrary, the whole tenor of the rules stated to the jury is to the opposite effect.

3. RAILROADS: crossing accidents: last clear chance: instructions.

It is again asserted that the court told the jury, with respect to the last clear chance, that it was the absolute duty of the motorman to stop the car, if notified that the automobile was not going to stop; but this is hardly a fair interpretation of the instruction. What the court said in this

respect was (after stating the rule giving the car the right of way at the crossing):

"If, however, the motorman is notified, or has reason to believe, that the automobile is not going to stop, it becomes his duty to use all the reasonable means within his power to prevent a collision, even to the extent of stopping his car in time (if he can do so) to prevent an accident."

This is a very clear and temperate statement of the undoubted rule. Criticism is made of the use of the words "is notified" as being inaccurate and misleading, but it appears to have been used in the sense of "had knowledge," and the jury could not reasonably have given it any other effect.

To another paragraph containing somewhat similar language with respect to the duty to stop the car under some circumstances, exception is also taken; but counsel concede in argument that the court limited the effect of the construction "enough to save it from grievous error." Indeed, construing the charge as given, with respect to admitted or well-proved facts before the jury, it goes no further than to charge each party with the duty to "exercise such care and prudence as a man of ordinary care and prudence would have exercised under like circumstances and conditions." The entire charge is but an elaboration of this central proposition.

It is finally argued that there are other errors in the instructions, to which appellant has had no opportunity to object, and that it has, therefore, not had a fair trial. This complaint does not appear to be well founded. **4. TRIAL: instructions: objections and exceptions: revision after submission to counsel: insufficient time for exceptions.** If the court failed to give the appellant proper opportunity to except to the instructions, counsel, in the interest of his client, could have made appropriate objection at the time, and caused the same, and the facts upon which the objection was based, to be made a part of the record. Had counsel desired more time to examine the charge, we cannot

assume that the court would not have granted it, if asked to do so. Again, the statute, Chapter 289, Laws of the Thirty-fifth General Assembly, provides an opportunity for a party to embody additional objections to the instructions, in his motion for a new trial. The practice could scarcely be made more liberal in this respect.

No reversible error being shown, the judgment of the district court is—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.